**ATTACHMENT B**

COURT OF APPEALS
DECISION
DATED AND FILED

March 8, 2011

A. John Voelker
Acting Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2010AP418

STATE OF WISCONSIN

Cir. Ct. No. 2007CV13965

IN COURT OF APPEALS
DISTRICT I

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY,

    PLAINTIFF-THIRD-PARTY DEFENDANT-RESPONDENT,

  V.

TRI-CORP HOUSING, INC.,

    DEFENDANT-THIRD-PARTY PLAINTIFF-APPELLANT,

RELIABLE WATER SERVICES, LLC,
MILWAUKEE COUNTY HOME REPAIR
AND ZIGNEGO READY MIX, INC.,

    DEFENDANTS,

  V.

ROBERT BAUMAN, ALDERMAN,

    THIRD-PARTY DEFENDANT.

    APPEAL from a judgment of the circuit court for Milwaukee County: MEL FLANAGAN, Judge. *Affirmed*.

Before Curley, P.J., Kessler and Brennan, JJ.

¶1  CURLEY, P.J.  Tri-Corp Housing, Inc., appeals the grant of summary judgment to the Wisconsin Housing and Economic Development Authority ("WHEDA") on WHEDA's foreclosure claim against Tri-Corp. Tri-Corp also appeals the grant of summary judgment in favor of WHEDA dismissing all of Tri-Corp's counterclaims against WHEDA. Tri-Corp argues on appeal that because the evidence in the record was sufficient to establish an issue of fact regarding its numerous counterclaims against WHEDA, the trial court erred in granting summary judgment against Tri-Corp. Tri-Corp also argues that the trial court erred in granting summary judgment in favor of WHEDA on WHEDA's foreclosure claim against Tri-Corp because the facts supporting its counterclaims constitute a defense to WHEDA's foreclosure claim. We affirm.

## I. BACKGROUND.

### A. WHEDA's Foreclosure Action

¶2  This case commenced as a foreclosure action brought by WHEDA against its mortgagor, Tri-Corp Housing, Inc. The facts precipitating the foreclosure litigation are as follows:

¶3  On April 17, 2003, Tri-Corp executed and delivered a multi-family note to WHEDA for approximately $1.6 million and secured it with a multi-family mortgage. The loan was secured by two parcels of real estate: 6640 West Beloit Road, West Allis, WI—known as "New Samaria"—and 2713 West Richardson Place, Milwaukee, WI—known as "West Samaria." These two facilities serve individuals with cognitive disabilities.

2

¶4  While there were no difficulties reported in the first year of the loan, Tri-Corp lost a community development block grant of $1 million from the City of Milwaukee the following year. WHEDA had nothing to do with Tri-Corp losing this funding source. Tri-Corp's executive director, Michael Brever, testified that the loss of the grant was a severe financial blow to Tri-Corp.

¶5  In 2005, a financial statement raised concerns regarding Tri-Corp's viability as a going concern. In the statement, an independent auditor commented:

> For the past several years, Tri-Corp has incurred significant losses and negative cash flows from its activities and programs. On December 31, 2005, Tri-Corp is in arrears in paying amounts due vendors, and its current liabilities exceed its current assets by approximately $860,000. The ratio of an organization's current assets to its current liabilities is an indicator as to whether the company can meet its obligations in a timely manner. These factors raise substantial doubt about Tri-Corp's ability to continue as a going concern. Management is attempting to mitigate losses through a combination of increased rental fees, a new marketing plan to reduce vacancies, an increase in profitable construction and rehabilitation projects, the selling of rental properties, and implementing more aggressive policies to improve procedures ... Tri-Corp's ability to continue as a going concern is dependent upon management's ability to implement this plan. However, there can be no assurances that any or all of these items will be accomplished.

(Punctuation added.)

¶6  Tri-Corp eventually defaulted on its loan by failing to make its monthly payments beginning in June 2007. Discussions between WHEDA and Brever took place after June 13, 2007, to determine the future of Tri-Corp's loan and the properties secured by it. Brever had also been in contact with an entity that had expressed interest in purchasing West Samaria. On November 19, 2007, however, WHEDA decided instead to exercise its rights under the mortgage

3

agreement and filed a foreclosure action against Tri-Corp, which is the subject of this appeal.

*B. Tri-Corp's Counterclaims*

¶7   In response to WHEDA's foreclosure action, Tri-Corp admitted that it did in fact default on payment, but also asserted that WHEDA had affirmatively taken steps to prevent Tri-Corp from bringing itself current with its mortgage. Tri-Corp asserted numerous counter-claims against WHEDA, which are also the subject of this appeal: (1) breach of the duty of good faith; (2) tortious interference with commercial relations; (3) conspiracy in violation of WIS. STAT. § 134.01 (2009-10);[1] (4) common law civil conspiracy; (5) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act and of Wisconsin's Organized Crime Control Act ("WOCCA"); (6) violations of the Federal Fair Housing Act; (7) violation of the Americans with Disabilities Act; and (8) violation of the Rehabilitation Act. Tri-Corp also made claims against third-party defendant City of Milwaukee Alderman Robert Bauman, a claim which is not at issue in this appeal.

¶8   Tri-Corp based its counterclaims on WHEDA's and Bauman's actions during the time leading up to and during the filing of the foreclosure action.

¶9   For example, Alderman Bauman—a vocal opponent of West Samaria—communicated to the head of WHEDA, Antonio Riley, that he wanted

---

[1] All references to the Wisconsin Statutes are to the 2009-10 version unless otherwise noted.

4

West Samaria closed. Alderman Bauman and Riley had a meeting in August 2007 at which they discussed the fact that Tri-Corp had defaulted on its mortgage, and also that the "goal," should Tri-Corp be foreclosed upon, was to relocate the residents of West Samaria and raze the structure.

¶10 Additionally, WHEDA representatives and Milwaukee County representatives had a meeting on about October 19, 2007, to discuss the future of West Samaria—a meeting to which Tri-Corp representatives were not invited. Shortly after this meeting, Milwaukee County initiated steps to relocate existing West Samaria residents.

¶11 Later, on about November 8, 2007, WHEDA staff called Tri-Corp's executive director and told him that WHEDA intended to foreclose its mortgage. Tri-Corp's director was surprised because Tri-Corp was aware of the default and had been working to bring the loan current throughout the summer. Indeed, Tri-Corp made proposals to WHEDA to apply the proceeds from the sale of other properties toward the West Samaria mortgage and was waiting for WHEDA's reply when WHEDA announced its intent to foreclose.

¶12 Finally, on November 12, 2007, WHEDA also sent a press release to a Milwaukee Journal Sentinel reporter that misrepresented Tri-Corp as agreeing that the closure of West Samaria was in the residents' best interests. Tri-Corp objected to the press release, but WHEDA's executive director distributed it anyway.

*C. Procedural History*

¶13 WHEDA moved for summary judgment on its foreclosure claim and also moved for summary judgment on all of Tri-Corp's counterclaims. The trial

5

court granted both of WHEDA's motions, and also entered judgment in favor of Alderman Bauman, which is the subject of a separate appeal. Tri-Corp now appeals.

## II. ANALYSIS.

¶14 We review *de novo* the grant or denial of summary judgment, employing the same methodology as the circuit court. *See* **Smaxwell v. Bayard**, 2004 WI 101, ¶12, 274 Wis. 2d 278, 682 N.W.2d 923. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the party opposing the motion. **Lambrecht v. Estate of Kaczmarczyk**, 2001 WI 25, ¶23, 241 Wis. 2d 804, 623 N.W.2d 751. If there is any reasonable doubt regarding whether there exists a genuine issue of material fact, that doubt must be resolved in favor of the nonmoving party. **Schmidt v. Northern States Power Co.**, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294.

*A. The trial court correctly granted WHEDA summary judgment on Tri-Corp's counterclaims.*

¶15 Tri-Corp claims that the trial court erred in granting summary judgment against each of its counterclaims against WHEDA. We address Tri-Corp's arguments regarding each claim in turn.

### 1. Breach of Contractual Duty of Good Faith

¶16 Tri-Corp argues that that "WHEDA violated its duty of good faith to Tri-Corp by engaging in conduct which both undermined the value of West Samaria and impeded Tri-Corp's ability to repay its mortgage loan."

6

¶17   According to Tri-Corp, WHEDA breached its duty of good faith in three ways. First, WHEDA arranged the October 19, 2007, meeting with Milwaukee County representatives at which it was decided that West Samaria residents would be relocated elsewhere. Tri-Corp argues that the result of the decision to relocate West Samaria residents "injured and destroyed Tri-Corp's right to receive the fruits of the contract." Second, WHEDA refused to consider alternatives to foreclosure. Tri-Corp argues, for example, that even though its director met with WHEDA representatives in July 2007 to discuss various means of bringing the loan current, WHEDA went ahead with the foreclosure action anyway. WHEDA further refused to consider alternatives to foreclosure after it initially filed its foreclosure action, including Tri-Corp's request that WHEDA bifurcate the mortgages of West Samaria and New Samaria. Third, Tri-Corp argues that WHEDA breached its duty of good faith by distributing a press release that misrepresented Tri-Corp's position on West Samaria's closure.

¶18   Every Wisconsin contract includes an implicit obligation of good faith and fair dealing. *LDC-728 Milwaukee, LLC v. Raettig*, 2006 WI App 258, ¶11, 297 Wis. 2d 794, 727 N.W.2d 82. The duty of good faith represents a

> guarantee by each party that he or she "will not intentionally and purposefully do anything to prevent the other party from carrying out his or her part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."

*Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶41, 301 Wis. 2d 752, 734 N.W.2d 169 (citation omitted). "Behaviors recognized as a lack of good faith are: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* (citation and internal quotation marks omitted). On the other hand, where one of the contracting parties complains of acts that are specifically authorized in the

7

agreement, there is no breach of good faith and fair dealing as a matter of law. ***M&I Marshall & Ilsley Bank v. Schlueter***, 2002 WI App 313, ¶15, 258 Wis. 2d 865, 655 N.W.2d 521. "'Indeed, it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a 'bad faith' breach of that contract.'" *Id.* (citation omitted).

¶19 Whether WHEDA has breached its implied duty of good faith is a question of fact. *See Tang*, 301 Wis. 2d 752, ¶41. "Still, under our *de novo* review we must independently determine whether the facts in the record amounted to a breach." *Id.*, ¶46.

¶20 We conclude that, viewed in the light most favorable to Tri-Corp, the facts upon which Tri-Corp bases its claim would not allow a reasonable jury to find that WHEDA breached its duty of good faith. *See Lambrecht*, 241 Wis. 2d 804, ¶23. First, the October 19, 2007, meeting does not amount to a breach because there is no evidence that this meeting—nor any of the decisions that resulted from it—inappropriately prevented Tri-Corp from carrying out its part of the mortgage contract or prevented Tri-Corp from receiving the fruits of the contract. *See Tang*, 301 Wis. 2d 752, ¶41. The evidence does not support even an inference that the purpose or effect of this meeting was to thwart Tri-Corp's ability to pay its mortgage. Indeed, by the time this meeting took place, Tri-Corp had already suffered financial difficulties for several years and had been in default on its mortgage for several months. Tri-Corp had already been unable to carry out its part of the mortgage contract even before the decision to relocate residents was made. Therefore, the only inference possible from the facts Tri-Corp presents is that WHEDA and Milwaukee County discussed various options in preparation for the closure of West Samaria should WHEDA foreclose on Tri-Corp's loan, which it had the right to do under the contract. *See Schlueter*, 258 Wis. 2d 865, ¶15.

¶21 Second, WHEDA's decision to foreclose on the mortgage instead of pursuing Tri-Corp's proposed alternatives cannot be evidence of breach of the duty of good faith in this matter because WHEDA had the right to foreclose on Tri-Corp's loan once Tri-Corp defaulted. *See id.*

¶22 Third, WHEDA's distribution of the misleading press release does not constitute sufficient evidence of the breach of duty of good faith. There is no evidence that this press release—generated several months after Tri-Corp initially defaulted on its loan—prevented Tri-Corp from carrying out its part of the agreement, or did anything that had "'the effect of destroying or injuring the right of'" Tri-Corp "to receive the fruits of the contract." *See Tang*, 301 Wis. 2d 752, ¶41 (citation omitted).

### 2. Tortious interference with the commercial relationship between Tri-Corp and Milwaukee County

¶23 Tri-Corp next argues that WHEDA's holding of the October 19, 2007, meeting with Milwaukee County representatives regarding the future of West Samaria constituted tortious interference with the commercial relationship between Tri-Corp and Milwaukee County. According to Tri-Corp, this is because the meeting directed Milwaukee County to begin referring individuals to facilities other than West Samaria and begin taking steps to relocate individuals already residing at West Samaria. Tri-Corp argues that the meeting is suspect because it was held before WHEDA filed its foreclosure action, even though the meeting was held more than four months after Tri-Corp defaulted on its loan.

> Interference with a present or prospective contractual relationship requires proof of the following five elements: (1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and

9

> the damages; and (5) the defendant was not justified or privileged to interfere.

***Burbank Grease Servs., LLC v. Sokolowski***, 2006 WI 103, ¶44, 294 Wis. 2d 274, 717 N.W.2d 781 (citation and internal quotation marks omitted). "All of these elements require full factual development." *Id.*

¶24    We conclude that summary judgment was appropriate on Tri-Corp's tortious interference claim because there is no evidence that the October 19, 2007, meeting was undertaken with the intent to interfere with Tri-Corp's relationship with Milwaukee County. *See id.* Nor is there any evidence of any casual connection between the meeting and any damages suffered by Tri-Corp. *See id.* As noted, this meeting took place several months after Tri-Corp defaulted on its mortgage, and the only inference that can be drawn from the content of the meeting that Tri-Corp supplies is that WHEDA and county representatives only intended to prepare for the relocation of West Samaria residents should WHEDA foreclose on Tri-Corp's loan. Moreover, as WHEDA correctly notes, even if Milwaukee County did in fact cease referring residents to Tri-Corp because it learned from WHEDA that Tri-Corp would likely be foreclosed upon, WHEDA did nothing inappropriate because it was merely conveying truthful information regarding Tri-Corp's financial difficulties. *See Liebe v. City Fin. Co.*, 98 Wis. 2d 10, 14, 295 N.W.2d 16 (Ct. App. 1980) ("One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation by giving the other third person truthful information or honest advice.").

### 3. WISCONSIN STAT. § 134.01 and Common Law Civil Conspiracy Claims

¶25  Tri-Corp bases both its statutory and common law civil conspiracy claims on four pieces of evidence: (1) the fact that Alderman Bauman, who was a vocal opponent of West Samaria, and Riley, the head of WHEDA, were friends; (2) the fact that Alderman Bauman and Riley had a meeting in August 2007 where they discussed the fact that Tri-Corp had defaulted on its mortgage and the "goal," should Tri-Corp be foreclosed upon, was to relocate the residents of West Samaria and raze the structure; (3) the October 19, 2007, meeting heretofore discussed; and (4) the November 2007 press release that misrepresented Tri-Corp's position on West Samaria.  Because Tri-Corp bases its statutory and common law conspiracy claims on the same evidence, and because the conspiracy claims share the same essential elements, we analyze them together. *See* WIS. STAT. § 134.01; *City of Milwaukee v. NL Indus., Inc.*, 2005 WI App 7, ¶25, 278 Wis. 2d 313, 691 N.W.2d 888 ("A civil conspiracy in Wisconsin is a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.") (citation and internal quotation marks omitted).

¶26  Under WIS. STAT. § 134.01, Tri-Corp had to prove the following elements to present its conspiracy claim to a jury: that WHEDA and Alderman Bauman acted together, with malice, with the common purpose to injure Tri-Corp's business, and that they did in fact financially injure Tri-Corp. *See id.*; *see also* WIS JI—CIVIL 2820 (2010).  Furthermore, we note that "[w]hile inferences reasonably drawn are appropriate bases for unassailable findings of fact in most cases … Wisconsin law in respect to conspiracies imposes a more stringent test." *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 84,

469 N.W.2d 629 (1991). To prove a conspiracy, Tri-Corp must show more than mere suspicion or conjecture that there was a conspiracy or that there was evidence of the elements of a conspiracy. See *id.* If circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy is not proven, and, in such circumstances, the matter at issue should *not* be submitted to the jury. *Id.* at 85. Thus, "the credible evidence that is sufficient to sustain a jury verdict of conspiracy must be of a quantum that the trial judge can conclude leads to a reasonable inference of conspiracy," and "[i]f not, it should not be submitted to a jury at all." *Id.*

¶27 Summary judgment was appropriate on Tri-Corp's conspiracy claims because there is no evidence beyond mere speculation and conjecture that Alderman Bauman and Riley conspired to ruin Tri-Corp's business at West Samaria. See WIS. STAT. § 134.01; *see also* WIS JI—CIVIL 2820. That Riley and Alderman Bauman knew each other and were friends was undisputed; that Bauman was a vocal opponent of the West Samaria facility was undisputed; that WHEDA as Tri-Corp's lender had meetings that involved Alderman Bauman was undisputed. But these facts, even when taken together, do not allow even an inference that Alderman Bauman and Riley acted with malice, with the common purpose to injure Tri-Corp's business. See § 134.01; *see also* WIS JI—CIVIL 2820.

### 4. RICO and WOCCA Claims

¶28 Regarding its RICO and WOCCA claims, Tri-Corp argues that there is sufficient evidence from which a trier of fact could find violations of these acts. However, Tri-Corp does not explain how the evidence in the record would allow a jury to form this conclusion; it merely states that its reasons for appealing the trial court's grant of summary judgment on these claims "have been set out

12

previously." Because Tri-Corp has not developed its arguments regarding these claims, we decline to address them. *See State v. McMorris*, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (The court of appeals "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record."). We therefore conclude that summary judgment in WHEDA's favor was appropriate regarding these claims.

### 5. Fair Housing Act Violations

¶29    Tri-Corp next argues that its Fair Housing Act claims against WHEDA should have been decided by a jury. According to Tri-Corp, "there is evidence that WHEDA facilitated Alderman Bauman's desire to close West Samaria and not have persons with [cognitive] disabilities reside in his neighborhood," and there is also evidence that "WHEDA failed to act reasonably in respect to its loans to Tri-Corp to the detriment of Tri-Corp's residents, who are disabled." Specifically, Tri-Corp argues that WHEDA intentionally discriminated against Tri-Corp by adopting Alderman Bauman's "plan to get West Samaria out of his neighborhood." Tri-Corp also argues that WHEDA failed to provide "reasonable accommodation" to Tri-Corp by foreclosing on Tri-Corp's loan despite the fact that Tri-Corp had proposed several foreclosure alternatives.

¶30    The federal Fair Housing Act makes it unlawful to discriminate against any person in the term, conditions, or privileges of sale or rental of a dwelling because of handicap. 42 U.S.C. § 3604(f)(2) (2010). To withstand summary judgment on a claim under the Fair Housing Act, Tri-Corp had to provide evidence from which a jury could determine that WHEDA: (1) exercised discriminatory intent; (2) took actions that caused a "disparate impact"; or

(3) failed to make reasonable accommodation. *See Larkin v. State of Mich. Dep't of Social Servs.*, 89 F.3d 285 (6th Cir. 1996); *Oconomowoc Residential Programs, Inc. v. City of Greenfield*, 23 F. Supp. 2d 941, 955-56 (E.D. Wis. 1998).

¶31 We conclude that Tri-Corp failed to submit sufficient evidence to withstand summary judgment on any of these theories. The record is completely devoid of any evidence showing that WHEDA's decision to foreclose on Tri-Corp's loan was based on the disabilities of West Samaria's residents. Also, Tri-Corp has failed to provide any evidence showing a connection between WHEDA's refusal to adopt any of its foreclosure alternatives—which it had a right to do under the contract—and the disabilities of West Samaria residents. Therefore, summary judgment was appropriate on Tri-Corp's Fair Housing Act claims.

### 6. Americans with Disabilities Act Violations

¶32 Regarding its Americans with Disabilities Act (ADA) claim, Tri-Corp argues:

> As is the case under the [Fair Housing Act], there are issues of fact ... on the claim that WHEDA violated [the] ADA by failing to extend a "reasonable accommodation" to Tri-Corp in connection with the loan at issue, which was clearly designed to promote housing for people with disabilities.

Tri-Corp fails to identify what the issues of fact are, however, and thus has insufficiently developed its argument with respect to this claim. Therefore, we will not consider it, *see McMorris*, 306 Wis. 2d 79, ¶30, and conclude that summary judgment was appropriate.

14

### 7. Rehabilitation Act Violation

¶33 Regarding its Rehabilitation Act claim, Tri-Corp argues—without citation to any supporting evidence—that WHEDA's decision to foreclose on Tri-Corp's loan while allowing other entities to cure defective loans was motivated by the disabilities of West Samaria residents. We will not consider such an undeveloped argument, see *McMorris*, 306 Wis. 2d 79, ¶30, and therefore we conclude that summary judgment was appropriate for this claim.

*B. The trial court correctly granted WHEDA summary judgment on its foreclosure claim against Tri-Corp.*

¶34 Without sufficient explanation or citation to the record, Tri-Corp states that the "facts supporting Tri-Corp's counterclaims also support its defense to WHEDA's foreclosure claim." It then asks this court to use its equitable power to reverse the trial court's grant of summary judgment on WHEDA's foreclosure claim. We decline to consider this argument because it is not adequately developed, see *id.*, and therefore conclude that summary judgment was proper regarding WHEDA's foreclosure claim.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

15