UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRI-CORP HOUSING, INC,

    Plaintiff,

    v.                                                    Case No. 12-C-216

ROBERT BAUMAN, ALDERMAN

    Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE TESTIMONY BY MICHAEL BREVER ON DAMAGES**

---

## INTRODUCTION

This lawsuit arises out of events that resulted in the loss of a property in the City of Milwaukee owned by Tri-Corp Housing, Inc. ("Tri-Corp"). Smokowicz Affidavit, Attachment B [Brever deposition], p. 8-10. Tri-Corp owned two properties subject to a WHEDA mortgage, one at 6700 West Beloit Road in West Allis (see Smokowicz Affidavit, Attachment A [Brever Affidavit], Exhibit 2, p. 2, Attachment B [Brever deposition], p. 10), and one at 2713 West Richardson Place in Milwaukee (see Smokowicz Affidavit, Attachment B [Brever deposition], p. 9). The first of these two properties is referred to as "New Samaria." Smokowicz Affidavit, Attachment B [Brever deposition], p. 10. The Milwaukee property is referred to as "West Samaria." Smokowicz Affidavit, Attachment B [Brever deposition], p. 8. WHEDA held the mortgage and foreclosed on it with respect to New Samaria. *See* http://wcca.wicourts.gov entry for Milwaukee County Case No. 07CV013965, Docket

#'s 32 and 35. New Samaria was the subject of a receivership in the Wisconsin state courts. *Id.*, Dckt. #110. West Samaria has ultimately been taken by the City of Milwaukee for delinquent city utility payments.

Michael S. Brever was the executive director of Tri-Corp and held that position since 1998. Smokowicz Affidavit, Attachment A [Brever Affidavit], p. 1, Attachment B [Brever deposition], p. 5. He has been designated as Tri-Corp's expert witness in this lawsuit "as to damages." Disclosure of Expert Testimony, Dkt. #7, p. 1, ¶ 2. As for the "substance" of his testimony, the Court and Alderman Bauman's counsel have been directed to Mr. Brever's "affidavit dated March 20, 2009, filed in state court on May 11, 2009." Disclosure of Expert Testimony, Dkt. #7, p. 1, ¶ 3. That affidavit is being submitted along with this motion. Smokowicz Affidavit, Attachment A [Brever Affidavit].

Mr. Brever has a Bachelor of Arts degree from the University of Wisconsin-Milwaukee. Smokowicz Affidavit, Attachment B [Brever deposition], p. 218. He majored in history. *Id.* He also has a master's degree in management from Cardinal Stritch University. *Id.* He does not have a degree in accounting. *Id.*, p. 218, 220. He is not a real estate appraiser and has not had any training in real estate appraising. *Id.*, p. 229.

Mr. Brever is not familiar with the purchase price of the West Samaria property and was not involved in its original purchase in 1976. *Id.*, p. 220, 221.

The loan from WHEDA required Tri-Corp to provide annual financial statements. Smokowicz Affidavit, Attachment B [Brever deposition], p. 16. The financial statements

2
Case 2:12-cv-00216-CNC   Filed 01/11/13   Page 2 of 12   Document 11

for the years 2005 and 2006 included an independent auditor's report reflecting that Tri-Corp "has suffered recurring losses, negative cash flows, and has current liabilities which significantly exceed current assets, which raise substantial doubt about the ability of Tri-Corp Housing Inc. to continue as a going concern." Smokowicz Affidavit, Attachment B [Brever deposition], p. 16-17. The audit further reflected that as of December 31, 2005 Tri-Corp was in arrears in payments owed to vendors, and that its then-current liabilities exceeded its then-current assets by approximately $860,000. Smokowicz Affidavit, Attachment B [Brever deposition], p. 20.

By the spring of 2007, there was a series of delayed payments and automatic bank withdrawal rejections of amounts owed by Tri-Corp to WHEDA. Smokowicz Affidavit, Attachment B [Brever deposition], p. 23. Eventually, WHEDA issued a notice of default on the mortgage on July 2, 2007 to Tri-Corp for the mortgage for West Samaria and New Samaria after a failure to make the June 2007 payment. Smokowicz Affidavit, Attachment B [Brever deposition], p. 24. Tri-Corp never cured the default and continued to fail to make payments in the subsequent months. Smokowicz Affidavit, Attachment B [Brever deposition], p. 26-27.

In spite of no longer making mortgage payments on the loan for New Samaria and West Samaria, Tri-Corp lost one of its other properties in a 2008 foreclosure action brought by WHEDA. Smokowicz Affidavit, Attachment B [Brever deposition], p. 29-31. Payments on the loan for West Samaria and New Samaria totaled approximately $18,000 per month plus a required payment for a reserve. Smokowicz Affidavit, Attachment B [Brever deposition], p. 151.

In the course of his March 2009 deposition, Mr. Brever attempted to provide an opinion as to the value of West Samaria. Because West Samaria was a tax-exempt property, Brever looked to West Allis' assessed value for New Samaria of $1,200,000. Smokowicz Affidavit, Attachment B [Brever deposition], p. 187. New Samaria had 75 beds. *Id.* He then divided the number of beds into the assessed value to come up with a valuation per bed for the chronically mentally ill of $16,000 to $17,000. Smokowicz Affidavit, Attachment B [Brever deposition], p. 187-8. Because West Samaria had more beds (92), he placed a value on it of $1,500,000 to $1,600,000. *Id.*

Mr. Brever then came up with an alternative method of valuing the property. He testified that another entity was working on opening up two properties to replace West Samaria, costing $1,000,000, and providing 24 beds. Smokowicz Affidavit, Attachment B [Brever deposition], p. 202. Extrapolating from that to 92 beds, Brever calculated the "replacement cost" as $4,200,000. *Id.*

Mr. Brever also addressed the issue of revenue or lost income from West Samaria. He claimed that the property was a "break even venture." Smokowicz Affidavit, Attachment B [Brever deposition], p. 211-12. However, he also acknowledged that every single penny of revenue generated by at virtually full New Samaria was being applied to expenses and that there was in 2009 then nothing left to pay for any mortgage expense. Smokowicz Affidavit, Attachment B [Brever deposition], p. 224-5.

In his March 2009 affidavit, however, Mr. Brever supplied yet another basis for valuing the West Samaria property. Smokowicz Affidavit, Attachment A [Brever Affidavit], p. 2, ¶3. Using a newspaper report concerning new special needs housing, he

4

Case 2:12-cv-00216-CNC   Filed 01/11/13   Page 4 of 12   Document 11

calculated a value of almost $16,000,000.00 as, once again, a form of "replacement cost" for a new facility. *Id*. He also continued to reiterate the $1,500,000 figure and so proposed a "reasonable range" of value from $1,500,000 to almost $16,000,000. Smokowicz Affidavit, Attachment A [Brever Affidavit], p. 3, ¶4.

Mr. Brever also supplied a calculation of lost revenue from the loss of West Samaria. Smokowicz Affidavit, Attachment A [Brever Affidavit], p. 3, ¶5. This calculation was based upon rent rosters and monthly income statements attached to his affidavit. Smokowicz Affidavit, Attachment A [Brever Affidavit], p. 3, ¶6. The revenue figures, however, show no offset for expenses. *Id*.

The monthly income statements span the years from 2005 through 2008. Smokowicz Affidavit, Attachment A [Brever Affidavit], Exhibits 4-7. There is no summary for each year, and so one has to take the monthly profit or loss figure to calculate the annual profit or loss. *Id*. Taking just what is shown on the statements themselves, the breakdown of profit or loss for each year is as follows:

```
2005              ($63,113.70) (loss)
2006               $41,527.91   profit
2007              ($140,783.52) (loss)
2008               $18,043.86   profit.
```

*Id*. The net for all these four years is a loss of $144,325.45.

However, the income statements for the property do not appear to include the mortgage payment expense to WHEDA for any of the years. Even if only one-half of the $18,000 monthly mortgage payment is attributable to West Samaria, that is an additional four-year expense of $432,000.00. That would mean that even in the year (2006) when

5

the property showed the highest profit on the monthly income statements submitted by Mr. Brever, the property actually had a loss of over $66,000.00.

Mr. Brever, lastly, attempts to quantify a loss-of-reputation claim for Tri-Corp. Smokowicz Affidavit, Attachment A [Brever Affidavit], p. 4, ¶ 7. He estimates that to be at least $10,000,000.00, basing it upon annual reports of the non-profit allegedly establishing a positive community reputation, the fact that it received a number of grants, and the size of its previous annual budgets. *Id.* Mr. Brever provides no evidence, however, that he has received any particular training in the valuation of corporations, whether for-profits or non-profits, or any particular training in valuation of the goodwill of corporations.

## ARGUMENT

### I. EXCLUSION OF TESTIMONY ON VALUE OF THE PROPERTY

Fed. R. Evid. 701 permits opinion testimony from a lay witness when it is, in part, "rationally based on the witness's perception" and when it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a) and (c). In its notes, the Advisory Committee indicates that, "[f]or example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert," explaining that this is the result of "the particularized knowledge that the witness has by virtue of his or her position in the business," and that the amendment to the rule "does not purport to change this analysis."

*Federal Civil Judicial Procedure and Rules* (2012 Rev. Ed.), p. 455 (Notes to 2000 Amendments).

Mr. Brever clearly is a lay person with regard to the value of the commercial property otherwise known as West Samaria. By his own admission, he is not a real estate appraiser and has no training in that field.

However, the circumstance of being an officer of a business does not automatically entail that the individual may testify as lay person about the value of a business' assets. In *Compania Administradora de Recuperacion de Activos Sdministradora de Fondos de Inversion Sociedad Anonima v. Titan International, Inc.*, 533 F.3d 555 (7th Cir. 2008), the court of appeals upheld the lower court's holding that the former president and CEO of Titan could not testify as to the value of certain collateral because the collateral was not owned by the company when the former president and CEO made his valuation, his valuation was based upon "his generalized knowledge of the worldwide tire market," the witness had not "participated in [the] initial purchase of the particular items in question, and his affidavit and deposition testimony established that he did not have personal knowledge of the items involved in the sale. *Id.*, 533 F.3d at 557-561. The court emphasized that this testimony "was based on [the witness'] special experience in the tire industry, not on his personal knowledge of the goods in question; therefore it falls within the purview of Rule 702 [testimony by expert witnesses]." *Id.*, 533 F.3d at 561. Because the witness had not been disclosed as an expert, the appellate court concluded that the district court had properly excluded his opinion testimony. *Id.*

In the present case, while Tri-Corp has disclosed Mr. Brever as an "expert" witness, its only basis for propounding his testimony is not any specialized training or knowledge, but merely his position as its executive director. He cannot, however, provide such testimony within the mandate of Rule 701 because he lacks the requisite "personal knowledge" of the property in question. *Compania Administradora*, 533 F.3d at 561.

Brever was not involved in the purchase of the property. He does not base his opinion on any valuation he may have made in obtaining any financing for the property, assuming he was involved in obtaining the mortgage. Instead, he bases his opinion solely upon: 1) public records of New Samaria, a property that was involved in the same type of operation, but which was located in a different city, and which has no demonstrated physical similarities; 2) the efforts of an entirely different corporation to create new housing facilities; and, 3) a newspaper report about the cost of creating yet other facilities. This does not represent personal knowledge of the asset in question but, rather, generalized knowledge about other activities in providing residences for the mentally ill.

Thrust into the realm of expert testimony under Fed. R. Evid. 702, Mr. Brever's testimony is then inadmissible. This Court must perform its gatekeeper function with respect to such testimony, even if it is testimony outside the realm of science. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1178 (1999). Among the factors that this Court must consider even for non-scientific expert testimony is whether the theory has

been generally accepted in the pertinent expert community. *Kumho*, 524 U.S. at ___, 119 S.Ct. at 1175.

Tri-Corp has not made and cannot make such a showing. Mr. Brever's property valuation runs the inherently incredible range of $1,500,000 to $15,000,000. At the low end, it is based upon another property that also provided housing to the mentally ill, but that is where the known similarities (except for the identity of ownership and mortgage) stopped. There is no showing, among other things, of: 1) comparable neighborhood setting; 2) comparable physical construction; 3) comparable size; 4) comparable configuration; 5) comparable age of structure; or 6) comparable conditions of repair. Most significantly, there is no showing that real estate appraisers would choose these two properties for purposes of any valuation.

On the high end, Mr. Brever relies upon the cost of replacing the subject property with a brand-new property serving as residences for the mentally ill. Once again, however, he shows nothing to indicate any comparability between the structures, does nothing to account for the obvious distinction of a new versus an existing structure, and makes no showing that any real estate appraiser would rely upon such a comparison to arrive at a real estate appraisal.

There is simply no showing that Mr. Brever has "reliably applied the principles and methods" of real estate appraisal "to the facts of the case." Fed. R. Evid. 702(d). This Court should exclude his proffered expert opinion regarding the value of the subject property.

## II. EXCLUSION OF TESTIMONY ON LOST REVENUE

As this is not an attempt to value property, and as there is no showing that Mr. Brever was personally involved in preparing any income statements or even reviewing consistently profitable statements for West Samaria, Tri-Corp has no basis to claim that the business owner or officer exception of Rule 701 applies to such a claim. *Compare Von Der Ruhr v. Immtech International, Inc.*, 570 F.3d 858, 862-3 (7th Cir. 2009). Falling within the ambit of Rule 702, Mr. Brever is not an accountant, has no training in accounting, and has demonstrated no specialized knowledge that would qualify him to render an opinion regarding lost revenue.

Tri-Corp, furthermore, fails to demonstrate that Brever's opinions or knowledge of the revenue figures would help the trier of fact or is in any way reliable or applied reliably. Fed. R. Evid. 702(a), (c) and (d). The monthly income statements that he has supplied (prepared by an unidentified source), do not demonstrate any accounting for the mortgage debt (much less consistent accounting for such an item as payroll tax). Smokowicz Affidavit, Attachment A [Brever Affidavit], Exhibits 4-7. In fact, given the demonstrated overall loss from this property for the years for which such statements have been provided and Brever's own testimony that his board viewed the operation as a "break even venture," there is no basis for any claim, expert or otherwise, that Tri-Corp suffered any economic loss from any lost revenue. Smokowicz Affidavit, Attachment B [Brever deposition], p. 211-12. The Court should, therefore, also exclude this unqualified and unreliable testimony.

### III.   EXCLUSION OF TESTIMONY ON LOSS OF BUSINESS REPUTATION

Once again, such testimony is properly the province of an expert such as an accountant who is trained in the proper technique or methodology for calculating loss of business goodwill or reputation. *See Premium Technical Services Corporation v. Hubbell Power Systems, Inc.*, 2007 U.S. Dist. LEXIS 102327, *3, Case No. 05-4347-CV-C-SOW (W.D. MO 2007) ("Plaintiffs counter that their expert's opinions [including a loss of $500,000 for loss of goodwill] are based on his extensive knowledge, education and experience in the field of accounting…").

Mr. Brever is not an accountant and has not produced any evidence of any expertise or training in the valuation of businesses. Pursuant to Rule 702, this Court should exclude any proffered testimony by Brever as to any claim of business loss-of-goodwill.

## CONCLUSION

For the foregoing reasons, this Court should grant the defendant's motion to exclude the testimony of Michael Brever with respect to damages for loss of property value, loss of revenue and loss of reputation of the plaintiff, Tri-Corp Housing, Inc.

Dated and signed at Milwaukee, Wisconsin 11th day of January, 2013.

|  |  |
|---|---|
| P.O. ADDRESS:<br>800 City Hall<br>200 East Wells Street<br>Milwaukee, WI 53202<br>(414) 286-2601 | GRANT F. LANGLEY<br>City Attorney<br><br>s/JAN A. SMOKOWICZ<br>Assistant City Attorney<br>Attorneys for Defendant<br>Robert Bauman |

1033-2008-967.003:188135