UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

TRI-CORP HOUSING, INC.,

            Plaintiff,            Case No. 12-C-216

vs.

ROBERT BAUMAN

            Defendant.
_____

RESPONSE TO THE DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY BY MICHAEL S. BREVER ON DAMAGES
_____

The defendant Robert Bauman has moved to exclude the testimony of Michael S. Brever on damages sustained by Tri-Corp Housing, Inc. ("Tri-Corp") as a result of his conduct. As stated in Tri-Corp's complaint and as recited by the Wisconsin Court of Appeals in its decision on the matter,[1] Tri-Corp is a nonprofit corporation which among other things, provided housing for individuals with mental disabilities in a 92 unit dwelling within blocks of Mr. Bauman's home. Over a period of years culminating in 2007 the defendant Bauman maliciously attacked Tri-Corp and sought to achieve the closure of West Samaria. In late 2007 he succeeded by persuading WHEDA, Milwaukee County, and others to close the facility and relocate its occupants.

At the time this occurred and for many years beforehand, Michael S. Brever was the executive director of Tri-Corp. As such, he managed the facility throughout the time when the defendant Bauman mounted his attacks on West Samaria, throughout the time when West

---

[1] Wisconsin Hous. & Econ. Dev. Auth. v. Tri Corp Hous., Inc., 2011 WI App 99, 334 Wis. 2d 809, 800 N.W.2d 958 review denied, 2011 WI 100, 337 Wis. 2d 52, 806 N.W.2d 639.

1

Samaria's residents were relocated, and through the subsequent demise of Tri-Corp's nonprofit operations. He has had over thirty years of experience in working with nonprofits, most of which was with Tri-Corp and one of its predecessor nonprofit organizations. Mr. Brever has a graduate degree in management, but most of his expertise comes from his experience in managing nonprofit organizations. [Brever Aff'd, ¶¶ 2, 3, 6]

This case was brought before this Court upon Bauman's notice of removal. [Doc 1] This action had been filed in the Circuit Court for Milwaukee County on November 19, 2007. It was dismissed on summary judgment, appealed, reversed, and remanded to the Circuit Court for trial on September 8, 2011. Most of the pretrial procedure was completed before the Circuit Court heard motions for summary judgment. After the Wisconsin Court of Appeals remanded the case, the Circuit Court entered a new scheduling order and set the matter for a pretrial conference on September 19, 2012. Before that happened, on March 5, 2012, the defendant Bauman filed a notice of removal.

The significance of the procedural history is that most of the pretrial procedure was completed before the Milwaukee County Circuit Court. The parties exchanged witnesses and completed their discovery under those rules. In the state court proceedings, Mr. Brever was noticed for a deposition by counsel for a party other than the defendant Bauman. He was asked questions without full access to Tri-Corp's business records. After the deposition, he by agreement supplied information relative to Tri-Corp's damages. Since that time he has never been deposed by any other attorney in the state court proceedings or by the defendant Bauman's counsel after the case was removed to federal court.

On July 26, 2012, the Court had the parties appear for a scheduling conference. The Court ordered the plaintiff to disclose experts by September 9, 2012, the defendant to disclose experts by October 25, 2012, and both parties to complete expert discovery by December 3, 2012. [Doc 6] On September 9, 2012, Tri-Corp disclosed that it would continue to introduce expert testimony through Michael S. Brever [Doc 7], and on September 10, 2012 (September 9, 2012 was a Sunday), added Walter Laux as an expert [Doc 8]. The defendant Bauman did not name any expert witnesses nor did the defendant Bauman conduct any discovery as to Tri-Corp's experts.

## ARGUMENT

Tri-Corp has designated its executive director, Mr. Michael S. Brever, to testify about the damages Tri-Corp sustained when it was driven out of business by the defendant Bauman's relentless campaign against it. Mr. Brever has been designated as both a lay and an expert witness in this case under Rules 701 and 702 of the Federal Rules of Evidence, which is entirely proper. According to the Advisory Committee Notes to the 2000 Amendments to Rule 701:

> "The amendment does not distinguish between expert and lay witnesses, but rather between expert and lay *testimony*. Certainly it is possible for the same witness to provide both lay and expert testimony in a single case. ..." [Emphasis in original.]

See also Farner v. Paccar, Inc., 562 F.2d 518, 528-529 (8th Cir. 1977)(witness could testify "either as a lay witness speaking within his own knowledge and perception, see Fed.R.Evid. 701, or as an expert qualified by knowledge, experience or skill"); Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir. 1980)(recognizing that a witness may qualify under both Rules 701 and 702).

3

The district court's classification of a witness as lay or expert is a legal interpretation that is reviewed *de novo* on appeal, and whether the witness is properly qualified is also a legal question. Whether to allow the testimony of an otherwise qualified witness is within the discretion of the district court and is reviewed on appeal for abuse of discretion. Mannoia v. Farrow, 476 F.3d 453, 456 (7th Cir.2007); Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc., 533 F.3d 555, 559 (7th Cir. 2008).

The defendant Bauman's arguments on this motion are more concerned with creating a picture that Tri-Corp had financial troubles unrelated to Bauman's conduct than with addressing the issues related to this motion. It is difficult not to respond to this effort, especially when the presentation is misleading. [See, e.g., Brever Afd. ¶¶ 21-24] However, the issue before the Court is whether Mr. Brever's testimony on damages should be excluded under the Rules of Evidence.

When the defendant Bauman addresses this issue, the arguments read as though Mr. Brever had prepared an exhaustive report which contains his entire body of knowledge and testimony. However, Mr. Brever is not an outside paid expert, and although he volunteered information in an affidavit when this matter was before the state court, he is not a witness who must provide a written report under Rule 26(2)(B). The facts and opinions to which he would testify were summarized for Bauman's counsel. Afterwards, Bauman's counsel chose to not pursue any discovery as to these facts and opinions. Given this history, it is not fair to suggest that everything that Mr. Brever has to say about damages is confined to the snippets of deposition testimony and the affidavit referenced in the defendant Bauman's brief. Nor is it appropriate for counsel to offer his own opinions and arguments on financial information on the state of this

4

record. The issue is whether Mr. Brever can testify as to Tri-Corp's damages and not whether opposing counsel believes that he can undermine Mr. Brever's opinions through cross-examination when he testifies.

**1.      Mr. Brever is qualified to testify about damages as a lay witness under Rule 701.**

Rule 701 of the Federal Rules of Evidence, entitled "Opinion Testimony by Lay Witnesses," states:

> "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a)     rationally based on the witness's perception;
>
> (b)     helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c)     not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

The Advisory Committee Notes to the 2000 Amendments to Rule 701 support allowing Mr. Brever to testify to the value and lost profits of Tri-Corp:

> "... ***most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business***, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g., Lightning Lube, Inc. v. Witco Corp.* 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. ..." [emphasis added]

"The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination. See 3 J. Weinstein, Evidence P 701(02) at 701-9 and 701-17 (1978). A lay witness in a federal court proceeding is permitted

5

under Fed.R.Evid. 701 to offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived." <u>Teen-Ed, Inc. v. Kimball Int'l, Inc.</u>, 620 F.2d 399, 403 (3d Cir. 1980)(holding it was error to exclude company's accountant's calculation of company's lost profits under Rule 701 where he was familiar from regular work with the company's books and records (plaintiff had failed to disclose him as expert)).

See also <u>United States v. Valencia</u>, 600 F.3d 389, 416 (5th Cir. 2010)("We agree with the district court's conclusion that Glenn Labhart was a lay witness, and not an expert witness. Labhart's testimony related to his former job duties as risk officer at Dynegy. He recreated much of the analysis he regularly performed when evaluating risk tolerances. He was properly characterized as a fact or lay opinion witness. ... Because Labhart's knowledge and analysis were derived from duties he held at Dynegy, his opinions were admissible as testimony based upon personal knowledge and experience gained while employed by Dynegy. *See* Fed.R.Evid. 701. He engaged in precisely the kind of analysis he regularly performed as chief risk officer; the fact that he drew particular opinions and projection for the purposes of this case does not make him an "expert" within the meaning of Federal Rule of Evidence 702."); <u>In re Merritt Logan,</u> Inc., 901 F.2d 349 (3rd Cir. 1990)("Mr. Logan's personal knowledge of his business and Gilchrist's personal knowledge of how he prepared his survey were sufficient to make these witnesses eligible under Rule 701 to testify as to how lost profits could be calculated.")

In <u>Von der Ruhr v. Immtech Int'l, Inc.</u>, 570 F.3d 858, 862-63 (7th Cir. 2009), the Court of Appeals set out the standard for allowing a business owner or corporate officer to testify about lost profits as follows:

6

> " In the realm of lost profits, lay opinion testimony is allowed in limited
> circumstances where the witness bases his opinion on particularized knowledge he
> possesses due to his position within the company. *Id.* For example, the owner of an
> established business with a documented history of profits may testify to his
> expectation of continued or expanded profits when that opinion is based on his
> "knowledge and participation in the day-to-day affairs of [his] business." *Id.*
> (quoting *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir.1993)). This is
> allowed "only because that testimony is tied to [the witness'] personal
> knowledge...." *Compania Administradora de Recuperacion de Activos
> Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.,*
> 533 F.3d 555, 560 (7th Cir.2008)."

Bauman relies on Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc., 533 F.3d 555, 559 (7th Cir. 2008) to support his claim that Mr. Brever is not qualified to testify about Tri-Corp's damages because, allegedly, he lacks the requisite personal knowledge. In Compania, the defendant failed to designate expert witnesses on time,[2] and then tried to characterize its president as a lay witness to testify to the value of collateral (tires) for a loan guaranty it had given, alleging that the collateral was impaired by the plaintiff's actions. The president had extensive knowledge by virtue of his position about the world tire market, but no firsthand knowledge of the particular collateral involved:

> "Taylor's position therefore was not akin to the owner of a small business
> testifying to the value of that business. His attempt at valuation was not based on
> any knowledge obtained through his special relationship with the items in question;
> instead, he simply looked at a list of items provided by Compania, and he estimated
> their value based on his extensive experience purchasing and selling the type of
> goods at issue."

Mr. Bauman also complains that Mr. Brever relies in part on income statements which he did not necessarily prepare. In Von der Ruhr at 864, the Court stated:

---

[2]It bears noting that the admissibility of the president's testimony would not have been in issue had he been designated as an expert – an issue not present in this case.

7

> "...In *Lightning Lube,* 4 F.3d at 1175, the business owner was permitted to rely in part on a report he created with the assistance of an accountant in determining his damages calculation. But his testimony was also based on his 'knowledge and participation in the day-to-day affairs of his business,' which had actually realized profits. *Id.* at 1174–75. The Third Circuit affirmed the district court's conclusion that 'in preparing a damages report the author may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Fed.R.Evid. 701.' *Id.* at 1175 (quoting 802 F.Supp. 1180, 1193 (D.N.J.1992))."

See also <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1175 (3d Cir. 1993):

> "As we have recognized previously, '[t]he modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.' *Teen-Ed, Inc. v. Kimball Int'l, Inc.,* 620 F.2d 399, 403 (3d Cir.1980). Venuto thus was not required to qualify as an expert to offer opinion testimony concerning Lightning Lube's lost profits. *Id.* (accountant's personal knowledge of plaintiff's balance sheets sufficient to qualify him as a lay witness eligible under Rule 701 to testify as to calculation of lost profits); *Joy Mfg. Co. v. Sola Basic Indus., Inc.,* 697 F.2d 104, 110-12 (3d Cir.1982) (district court abused its discretion in striking nonexpert opinion testimony rationally based on witness's personal knowledge).
>
> "Witco argues that Lightning Lube failed to satisfy either of Rule 701' prerequisites for establishing a foundation for Venuto's lay opinion testimony. Witco first contends that the testimony was not based on Venuto's perceptions because he relied on the reports of an accountant. However, Venuto testified that he personally participated in making that report, a fact which Witco conceded at trial when it sought to exclude the accountant's damage report on the ground that Venuto and *not* the accountant formulated the projections. Thus, Witco's previous admissions belie its present argument. In any event, given Venuto's knowledge and participation in the day-to-day affairs of his business, his partial reliance on the report, even if prepared by an outsider, does not render his testimony beyond the scope of Rule 701. As the district court correctly noted, '[i]t is logical that in preparing a damages report the author may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Fed.R.Evid. 701.' *Lightning Lube, Inc. v. Witco,* 802 F.Supp. at 1193."

While serving as Tri-Corp's full-time executive director over the entire lifetime of the nonprofit organization, Mr. Brever oversaw Tri-Corp's growth from its inception to an

8

organization with an annual budget of $6.5 million, sixty-five employees, and approximately 850 units of supportive housing under its management. [Brever Afd, ¶¶2, 3, 5] He served as executive director when West Samaria was acquired by merger, when New Samaria was acquired from a third party, when both facilities were financed by WHEDA, and when both facilities were extensively remodeled with approximately $800,000 in funds garnered through fund raising and loans. [Brever Afd, ¶¶ 3, 8, 9, 18] He knows from his own participation in these events what these facilities cost and what it cost to remodel them. Id. He knows from his own participation in the events of this case and the books and records kept contemporaneously with those event, the dollar amount that Tri-Corp lost when Bauman caused the closure of West Samaria. [Brever Afd, ¶¶10-15] In his testimony he certainly can refer to the books and records of Tri-Corp that were maintained under his direction and which he used throughout his service as executive director. [Brever Afd, ¶¶8, 10]

In Wisconsin, the general rule is that a non-expert owner may testify concerning the value of their property, regardless of whether it is realty or personalty. Perpignani v. Vonasek, 139 Wis.2d 695, 737, 408 N.W.2d 1, 18 (1987); D'Huyvetter v. A.O. Smith Harvestore Products, 164 Wis. 2d 306, 323, 475 N.W.2d 587, 593 (Ct. App. 1991); Mayberry v. Volkswagen of Am., Inc., 2005 WI 13, 278 Wis. 2d 39, 63, 692 N.W.2d 226, 238. This rule extends to the valuation of a company's goodwill, meaning its good name and reputation. D.L. Anderson's Lakeside Leisure Co., Inc. v. Anderson, 2008 WI 126 ¶ 67, 314 Wis. 2d 560, 592, 757 N.W.2d 803, 818. "[B]ecause a corporation can only speak through its officers," an officer of a corporation can speak as the owner. Town of Fifield v. State Farm Mut. Auto. Ins. Co., 119 Wis. 2d 220, 232, 349 N.W.2d 684, 690 (1984).

9

As shown by the affidavit submitted with this response, Mr. Brever has a cogent basis for valuing the loss of West Samaria and New Samaria. While he is not an appraiser, over decades of experience in low income housing, he has been involved in transactions involving thousands of units in the Milwaukee area. [Brever Afd, ¶6] Mr. Brever was involved with the acquisition of New Samaria, and was the executive director of Tri-Corp when West Samaria was acquired by merger.[3] [Brever Afd, ¶3] More significantly, Mr. Brever headed the refinance and remodeling of both West Samaria and New Samaria that took place before the events of this case, and knows what the buildings cost and knows what it cost to refurbish them. [Brever Afd, ¶¶8, 9, 17-18] The result is consistent with other indicators of the value of the buildings, such as the real property assessment of New Samaria. [Brever Afd, ¶31]

The more difficult damage issue in this case is determining the amount that will compensate Tri-Corp for damage to its reputation – the loss of goodwill. What makes the issue difficult is its very nature. The Wisconsin Court of Appeals has recently noted the difficulty inherent in defining and valuing "goodwill":

> "In its broadest sense the intangible asset called good will may be said to be reputation; however, a better description would probably be that element of value "which inheres in the fixed and favorable consideration of customers arising from an established and well-conducted business."
>
> "No rigid and unvarying rule for the determination of the value of good will has been laid down by the courts; therefore, each case must be determined on its own facts and circumstances"

---

[3]Opposing counsel argues that Mr. Brever was not involved in the original purchase of West Samaria in 1976, citing Mr. Brever's deposition transcript. This is not when Tri-Corp's predecessor, Housing With Help, purchased the facility. [Brever Afd, ¶9]

10

McReath v. McReath, 2010 WI App 101, 329 Wis. 2d 155, 161, 789 N.W.2d 89, 92 aff'd, 2011 WI 66, 335 Wis. 2d 643, 800 N.W.2d 399, quoting from Spheeris v. Spheeris, 37 Wis.2d 497, 504, 155 N.W.2d 130 (1967). In Newark Morning Ledger Co. v. United States, 507 U.S. 546, 555, 113 S. Ct. 1670 (1993), quoting other authorities, the United States Supreme Court variously described "goodwill" as " 'the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity, or even from ancient partialities or prejudices'", or "that element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business."

    Mr. Brever has presented a cogent method of translating the damage to Tri-Corp's reputation to a dollar figure. [Brever Afd., ¶¶ 33-40] He shows how a good reputation translated into Tri-Corp's ability to attract grants and awards, which in turn, generated growth for Tri-Corp from year to year. It is the equivalent of the "fixed and favorable consideration of customers arising from an established and well-conducted business." His testimony as to the damages sustained by Tri-Corp by the loss of its goodwill and reputation is supported by the financial history of Tri-Corp prior to the events of this case (where at all times Mr. Brever headed Tri-Corp), and ought to be admitted.

11

## 2. Mr. Brever is also qualified to testify about damages as an expert witness under Rule 702.

Rule 702 of the Federal Rules of Evidence, entitled "Testimony by Expert Witnesses," states:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> "(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> "(b)  the testimony is based on sufficient facts or data;
>
> "(c)  the testimony is the product of reliable principles and methods; and
>
> "(d)  the expert has reliably applied the principles and methods to the facts of the case."

The Advisory Committee Notes to the 2000 Amendment to Rule 702 states:

> "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. ..."

Similarly, the court in <u>Matthews v. Waukesha County</u>, 10-C-440, 2012 WL 695669 (E.D. Wis. Mar. 1, 2012), stated:

> "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v.. McCoy,* 593 F.3d 610, 616 (7th Cir.2010) (citing *Daubert,* 509 U.S. at 596). "Expert testimony is liberally admissible under the Federal Rules of Evidence." *Lyman v. St. Jude Med. S.C., Inc.,* 580 F.Supp.2d 719, 723 (E.D.Wis.2008). Thus, there is a presumption of admissibility for expert testimony so long as it is relevant, reliable, will assist the trier of fact, and is not unduly prejudicial."

12

The 7th Circuit has described the analysis under Rule 702 as follows:

> "The Federal Rules of Evidence define an 'expert' as a person who possesses 'specialized knowledge' due to his 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court explained that it is the district court's role to act as a gatekeeper before admitting expert scientific testimony in order to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' *See also Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 824 (7th Cir.2010). When a district judge applies Rule 702 and *Daubert,* we will only reverse a ruling if it is 'manifestly erroneous.' *General Electric Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (quotation marks and citation omitted)." Banister v. Burton, 636 F.3d 828, 831 (7th Cir. 2011).

The 7th Circuit has also explained that experience and not only credentials may qualify a person as a Rule 702 expert:

> "Rule 702 is flexible and permits a witness to be qualified as an expert if he is 'qualified as an expert by knowledge, skill, experience, training, or education.' Fed.R.Evid. 702." United States v. Conn, 297 F.3d 548, 555 (7th Cir. 2002)

Also:

> "In applying these principles, we have said that 'the measure of intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary.' *Tyus v. Urban Search Mgmt.,* 102 F.3d 256, 263 (7th Cir.1996). Indeed, we have noted specifically that 'genuine expertise may be based on experience or training.' *Id.* As we pointed out in *United States v. Allen,* 269 F.3d 842, 846 (7th Cir.2001), the Advisory Committee notes to Rule 702 specifically note that '[i]n certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony.' Fed.R.Evid. 702, 2000 advisory committee note." United States v. Conn, 297 F.3d 548, 556 (7th Cir. 2002)

In Tuf Racing Products, Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000), the court rejected the notion that Daubert requires that an expert witness have particular credentials:

> "We move on to the issue of damages. Tuf presented its theory of damages by way of its accountant (a C.P.A.), and in the district court Suzuki argued that the accountant should not have been permitted to testify as an expert witness because

13

he does not have a degree in economics or statistics or mathematics or some other 'academic' field that might bear on the calculation of damages. The notion that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), requires particular credentials for an expert witness is radically unsound. The Federal Rules of Evidence, which *Daubert* interprets rather than overrides, do not require that expert witnesses be academics or PhDs, or that their testimony be 'scientific' (natural scientific or social scientific) in character. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718-19 (7th Cir.2000); *United States v. Williams,* 81 F.3d 1434, 1441 (7th Cir.1996); *Morse/Diesel, Inc. v. Trinity Industries, Inc.,* 67 F.3d 435, 444 (2d Cir.1995). Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness. Fed.R.Evid. 702; Advisory Committee's Notes to 1972 Proposed Rule 702; *United States v. Navarro*, 90 F.3d 1245, 1261 (7th Cir.1996); *United States v. Williams, supra,* 81 F.3d at 1441; *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 563 and n.17 (11th Cir.1998).

In view of these standards, Mr. Brever's testimony as to damages is admissible under both Rule 701 and Rule 702.

The mainstay of the defendant Bauman's arguments is that Mr. Brever is not an accountant and not an appraiser, and that Rule 702 excludes his testimony. However, the courts have rejected the notion that <u>Daubert</u> requires that an expert witness have particular credentials. Mr. Brever is an expert in developing and managing low income housing, as shown by his decades of experience.

Furthermore, Mr. Brever's testimony as to damages is straightforward and based on information that can be scrutinized by the defendant. Mr. Brever's years of experience are helpful to the trier of fact in reviewing this information and assessing Tri-Corp's damages. The defendant Bauman has the complete ability to review the facts underlying Mr. Brever's damage testimony, cross-examine Mr. Brever, and present his own evidence if he believes that he has evidence

14

proving the contrary of Mr. Brever's testimony. This is not a case where the Court should or needs to preclude testimony.

## CONCLUSION

For the foregoing reasons, Tri-Corp asks the Court to deny the defendant's motion to exclude the testimony of Michael Brever with respect to damages for loss of property value, loss of revenue and loss of reputation of the plaintiff, Tri-Corp Housing, Inc.

Dated this 1st day of February, 2013.

MACHULAK, ROBERTSON & SODOS, S.C.

 */s/ John E. Machulak*
John E. Machulak
State Bar No. 1018350

**Mailing Address:**
1733 North Farwell Avenue
Milwaukee, Wisconsin   53202
machulak@lawmessage.com
(414) 271-0760

15

Case 2:12-cv-00216-CNC   Filed 02/01/13   Page 15 of 15   Document 13