# ATTACHMENT A

STATE OF WISCONSIN   :   CIRCUIT COURT   :   MILWAUKEE COUNTY

---

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY,

(HIGHLAND COMMONS, LLC, by substitution)

               Plaintiff,                  Case No. 07-CV-013965

vs.

                                       Case Code : 30404

TRI-CORP HOUSING, INC.,

            Defendant and Third-Party Plaintiff,

and

COMMUNITY BANK GROUP, f/k/a LINCOLN STATE
BANK and f/k/a LINCOLN COMMUNITY BANK;
RELIABLE WATER SERVICES, LLC;
MILWAUKEE COUNTY HOME REPAIR; and
ZIGNEGO READY MIX, INC.

            Added Defendant(s)

vs.

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY and
ROBERT BAUMAN,

           Third-Party Defendants.

---

## AMENDED THIRD PARTY COMPLAINT OF
## TRI-CORP HOUSING, INC. AGAINST ROBERT BAUMAN

---

      The defendant, and third party plaintiff, Tri-Corp Housing, Inc., by its attorney John E.

Machulak of Machulak, Robertson & Sodos, S.C., as and for an amended third party complaint

against the third party defendant Robert J. Bauman, alleges as follows:

      1.      The third party plaintiff, Tri-Corp Housing Inc., is a non-profit organization

which, among other things, is dedicated to providing low income housing for residents of

1

Milwaukee County. One of Tri-Corp's missions is and has been to provide housing for mentally ill individuals who are not in need of confinement.

2.    The third party defendant, Robert J. Bauman ("Bauman"), is an adult resident of the State of Wisconsin, residing at 856 North 29th Street, Milwaukee, Wisconsin 53208, with offices at 200 West Wells Street, Milwaukee, Wisconsin. Bauman is currently a City of Milwaukee alderman.

3.    In 2007, Tri-Corp operated two buildings serving over 160 disabled individuals, providing them with housing, three meals a day, laundry and other services. One building, "West Samaria", was located at 2713 West Richardson Place, Milwaukee, Wisconsin, and the other, "New Samaria", was located at 6700 West Beloit Road, West Allis, Wisconsin.

4.    For decades prior to the events of this case, Tri-Corp and its predecessor non-profit organizations operated West Samaria, and later, New Samaria, as places where people with mental disabilities could live in the community. Residents were not confined, nor expected to be confined. While living at West Samaria and New Samaria, residents typically frequented stores and restaurants in the neighborhood. Residents were people of limited means. Typically, their only source of income was social security disability benefits averaging approximately $650.00 to $825.00 per month.

5.    Residents of both West Samaria and New Samaria came to Tri-Corp by way of referral from Milwaukee County, and were mostly participants in programs administered by Milwaukee County. The only exception to this was that part of the West Samaria facility was leased to the Red Cross for its own program serving mentally disabled individuals. The Red Cross leased thirty of the ninety-two rooms at West Samaria.

2

6. Individuals referred to Tri-Corp by Milwaukee County signed a lease with Tri-Corp. Residents paid $535.00 for a room, three meals a day, room cleaning, security, and social amenities offered by Tri-Corp. Typically, residents paid rent from funds provided to the residents by Milwaukee County and/or managed for the residents by a Milwaukee County employee.

7. In 1997, Bauman bought a house approximately two blocks from West Samaria, and then, in 2004, was elected alderman of the aldermanic district in which West Samaria was located.

8. Both before and after he was elected alderman, Bauman's wanted that the residents of West Samaria be relocated and that West Samaria no longer be a residence for mentally disabled individuals. In fact, Bauman wanted West Samaria razed.

9. Bauman engaged in continuous, persistent and unscrupulous conduct directed at closing West Samaria.

10. Bauman continually made false and scandalous statements to persons and entities upon whom Tri-Corp depended to continue to operate West Samaria.

11. Bauman falsely claimed that Tri-Corp was responsible for the death of David Rutledge, a resident of West Samaria, who on July 4, 2004 was assaulted down the block from West Samaria, by a street gang. To promote his goal of closing West Samaria, Bauman continually misrepresented the circumstances of Rutledge's death while implying that he had some special knowledge about what happened.

12. Bauman made false statements before the City of Milwaukee Board of Zoning Appeals ("BOZA") in an effort to prompt BOZA to deny Tri-Corp an occupancy permit for West Samaria.

3

13.    At a May 18, 2006 BOZA hearing Bauman falsely stated under oath:

> "...The cavalier comment was made, well, it's not the applicant's responsibility to
> watch over Mr. Rutledge 50 feet from the door of the establishment, but that's not
> all that happened in this case. While it's true that Mr. Rutledge was beaten on the
> public right-of-way, he also stumbled into the premises after he was beaten. He
> stumbled in. No one was there to ask him what happened, are you hurt, do you
> need attention, no one called the police, no one even knew what happened to the
> poor man. ...
>
> "That is the level of care that this fine establishment likes to maintain. A man can
> get beaten nearly to death 50 feet in front of the door, and while it is the public's
> responsibility in the public right-of-way, he goes back into his home, and no one
> gives a damn. ..."

In fact, Mr. Rutledge was helped by another resident and brought back to West Samaria, where

the security guard called 911. Within a half hour Mr. Rutledge was transported to the hospital.

Mr. Rutledge died at the hospital a few days later.

14.    Bauman manipulated the circumstances of the death of Joseph Droese to promote

his goal of closing West Samaria. On February 28, 2007, the Milwaukee Journal/Sentinel

reported that Joseph Droese, a resident of West Samaria who was being monitored by a

Milwaukee County caseworker, was found dead in his room.

15.    On or about March 1, 2007, Bauman sent an email to the Department of

Neighborhood Services ("DNS") to have the DNS issue an order to close West Samaria. The

email stated:

> "Please take immediate action regarding West Samaria.... The fact that a resident
> died and was not discovered for 4 days suggests that the facility is not operating
> in compliance with their plan of operation or operating in a manner consistent
> with the health, safety and welfare of the public.
>
> "Please issue the appropriate orders revoking their special use permit so this
> matter can be brought back before BOZA at the earliest possible time."

4

16.    The Department of Neighborhood Services, in response to Bauman's email, issued an order to revoke the special use permit without even visiting West Samaria or conducting any investigation. Bauman then represented that DNS acted on its own accord to close West Samaria, after conducting a true investigation.

17.    On or about April 19, 2007, Bauman wrote a letter to BOZA alleging, among other things, that residents were mistreated and that a resident was sexually assaulted at West Samaria. He appeared and presented the letter in the middle of a BOZA hearing with no prior notice to Tri-Corp. A later police investigation found no foundation for the allegations.

18.    At all times material, Bauman continually repeated these and other false allegations regarding Tri-Corp and events at West Samaria.

19.    From 2005 to 2007, Bauman tried to force the closure of West Samaria by demanding that the City of Milwaukee Board of Zoning Appeals ("BOZA") deny Tri-Corp an occupancy permit by making false and scandalous statements to BOZA in the presence of representatives of Milwaukee County and other persons and entities who worked with Tri-Corp.

20.    After approximately two years of hearings ending in September 2007, BOZA upheld Tri-Corp's right to operate West Samaria for its mentally disabled residents, however, Bauman damaged Tri-Corp's reputation with his false and malicious statements. Bauman then turned to other strategies to force West Samaria out of operation.

21.    Prior to these events, on April 17, 2003, Tri-Corp entered into a loan transaction with Wisconsin Housing and Economic Development Authority ("WHEDA") primarily to acquire and develop New Samaria as an additional location to serve the same mentally disabled population. In connection with this transaction, West Samaria and New Samaria were pledged to secure a single loan made by WHEDA in the amount of $1,629.000. This loan, as well as other

5

business arrangements between WHEDA and Tri-Corp., were outstanding at times material to the complaint.

22.     Bauman wrongfully interfered with Tri-Corp's relationship with WHEDA. Bauman knew that WHEDA was Tri-Corp's mortgage lender for West Samaria. Bauman contacted WHEDA and on or about August 8, 2007, met with Antonio Riley and with Rae Ellen Packard of WHEDA in Milwaukee at Bauman's office to persuade WHEDA that West Samaria should be closed and razed.

23.     Prompted by his meeting with Bauman at Bauman's office, Riley had WHEDA staff arrange for a meeting at WHEDA's Milwaukee office, which took place on October 19, 2007. AT WHEDA's invitation, the key representatives of Milwaukee County (Jim Hill and James Mathy) responsible for referring disabled individuals to West Samaria and New Samaria attended the meeting, as did Bauman, a representative of the City of Milwaukee Department of City Development (Maria Prioletta), and others. Tri-Corp was not notified of the meeting, did not know about it at the time it took place, and did not have anyone in attendance.

24.     When the October 19, 2007 meeting convened at WHEDA's Milwaukee office, WHEDA's executive director, Riley, announced that WHEDA would be closing West Samaria.

25.     At this meeting Bauman dissuaded participants from supporting West Samaria. He actively discouraged Milwaukee County from continuing to place mentally ill individuals under the care of the County at West Samaria, knowing full well that this would impair Tri-Corp's ability to have revenues sufficient to pay its mortgage to WHEDA and otherwise support West Samaria. Bauman berated the design, the location, and operation of West Samaria by Tri-Corp, told attendees that it would be a bad idea for another organization to acquire and continue West Samaria as a residence for mentally disabled individuals, and that he, as

6

alderman, would not support any redevelopment of the project. In fact, Bauman discouraged all efforts to have West Samaria continue as a residence for mentally disabled individuals.

26.     Bauman's statements regarding the design, the location, and operation of West Samaria were not only untrue, but Bauman had absolutely no basis for making them. Bauman never toured West Samaria even when invited to do so by Tri-Corp and was likely never even inside the building.

27.     Milwaukee County responded to Bauman's interference by relocating West Samaria's residents. Immediately after the October 19 meeting, Milwaukee County began to hold internal meetings to plan for the closure of West Samaria. Tri-Corp did not know of these internal meetings.

28.     While after the October 19 meeting, Milwaukee County began relocating residents from West Samaria, Milwaukee County did not move residents from New Samaria, even though West Samaria and New Samaria were subject to the same mortgage, and were operated by Tri-Corp in the same way for people with mental disabilities. In fact, meals came out of the same kitchen.

29.     After the October 19 meeting, Milwaukee County stopped referring residents to West Samaria although it continued to refer residents to New Samaria.

30.     Bauman interfered with not only Tri-Corp's relationship with Milwaukee County and others. Bauman also interfered with Tri-Corp's relationship with WHEDA. Before Bauman's interference, Tri-Corp had a good working relationship with WHEDA. After Bauman's interference, WHEDA became antagonistic.

31.     Approximately three weeks after the October 19 meeting, WHEDA staff called Tri-Corp's executive director to tell him that WHEDA intended to foreclose its mortgage.

7

WHEDA rejected Tri-Corp's reasonable plans to bring its loan current, to provide additional security for the loan, or to keep West Samaria in operation.

32.  On or about November 12, 2007, WHEDA notified Tri-Corp that it was about to issue a press release which falsely stated that Tri-Corp agreed that its West Samaria facility should be closed. Tri-Corp protested and advised WHEDA that the press release would be false. WHEDA, nonetheless, published the press release, further damaging Tri-Corp's ability to secure tenants for its West Samaria facility.

33.  On November 19, 2007, WHEDA filed an action to foreclose the mortgage against both West Samaria and New Samaria.

34.  While during the foreclosure action Milwaukee County continued its practice of not referring residents to West Samaria, New Samaria remained fully occupied with individuals with disabilities referred by Milwaukee County. In fact, Milwaukee County's referrals to New Samaria continued for the duration of WHEDA's foreclosure action.

35.  As a direct result and proximate cause of Bauman's conduct, Tri-Corp was injured and suffered damages.

### FIRST CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACTS AND WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS

As and for a first cause of action against Bauman, Tri-Corp alleges as follows:

36.  Tri-Corp incorporates, as if set forth in full, the preceding and following allegations contained in this amended third party complaint.

37.  Bauman tortiously interfered with Tri-Corp's contract relationship and prospective contract relationship with WHEDA.

8

38.   Bauman tortiously interfered with Tri-Corp's relationship with Milwaukee County, by causing Milwaukee County to discontinue its referral of people in need of services to West Samaria and to initiate steps to relocate residents of West Samaria.

39.   Bauman did so with improper motives, in bad faith, and with self-interest in mind.

40.   Bauman's interference was malicious and intentional, and was neither justified nor privileged.

41.   Bauman's conduct caused injury and damage to Tri-Corp, and Tri-Corp is entitled to both compensatory and punitive damages.

## SECOND CAUSE OF ACTION:
## DEFAMATION

As and for a second cause of action against Bauman, Tri-Corp alleges as follows:

42.   Tri-Corp incorporates, as if set forth in full, the preceding and following allegations contained in this amended third party complaint.

43.   Bauman made false statements regarding Tri-Corp and its operation of West Samaria.

44.   Bauman communicated these false statements by his speech, conduct and/or in writing to persons other than Tri-Corp.

45.   Bauman's communications were unprivileged and tended to harm Tri-Corp's reputation, lowering Tri-Corp in the estimation of the community and/or deterring third persons from associating or dealing with Tri-Corp.

46.   Bauman's statements were made with reckless disregard for the truth and were malicious.

9

47.    Bauman's false statements caused injury and damage to Tri-Corp, and Tri-Corp is entitled to both compensatory and punitive damages.

### THIRD CAUSE OF ACTION:
### VIOLATION OF 42 U.S.C. § 1983

As and for a third cause of action against Bauman, Tri-Corp alleges as follows:

48.    Tri-Corp incorporates, as if set forth in full, the preceding and following allegations contained in this amended third party complaint.

49.    Bauman's goal of closing West Samaria was motivated by his desire to prevent persons with mental disabilities from residing in his neighborhood and undermining the operations of a non-profit corporation, Tri-Corp, which provided them with assistance and the opportunity to reside in his neighborhood.

50.    At times during the course of the above events, Bauman used his status as alderman to advance his goal of undermining Tri-Corp and closing West Samaria and engaged in conduct under the color of state law.

51.    Bauman's conduct deprived Tri-Corp of a right, privilege or immunity protected by the United States Constitution or statutes, namely, the right to assist persons with disabilities to have equal access to housing under the Federal Fair Housing Act, including 42 U.S.C. §§3604, 3615 and 3617; under the Americans With Disabilities Act, including 42 U.S.C. §§12132 & 12203 and 28 C.F.R. §35.130; and under the Rehabilitation Act, including 29 U.S.C. §794, because as a result of his conduct, persons with disabilities, among other things:  (a) were denied or otherwise had housing made unavailable to them on the basis of their disabilities; (b) terms and conditions were imposed on supported housing for people with disabilities that are not imposed on similar residential uses for persons without disabilities; (c) persons with disabilities

10

were denied the right to move into residential districts which right is enjoyed by persons without disabilities; (d) persons with disabilities were provided with rights, privileges, advantages and services that are not as effective as those provided to others, and (e) persons with disabilities were denied the right to integrated community services.

52.     Bauman's conduct violated 42 U.S.C. § 1983.

53.     Bauman's conduct caused injury and damage to Tri-Corp, and Tri-Corp is entitled to both compensatory and punitive damages and its actual attorneys fees.

WHEREFORE, the third-party plaintiff Tri-Corp Housing, Inc., requests judgment against the third-party defendant Bauman for such compensatory and punitive damages as will be proven at trial, reasonable attorneys' fees, the costs and disbursement of this action, and such other relief as the Court determines to be just and equitable.

Dated this 3rd day of February, 2012.

MACHULAK, ROBERTSON & SODOS, S.C.

John E. Machulak
State Bar No. 1018350

**Mailing Address:**
1733 North Farwell Avenue
Milwaukee, Wisconsin   53202
(414) 271-0760

11