# United States District Court

EASTERN DISTRICT OF WISCONSIN

---

TRI-CORP HOUSING, INC.,

        Plaintiff,

        v.                                      Case No. 12-C-216

ROBERT BAUMAN, ALDERMAN,

        Defendant.

---

**COURT MINUTES**
**HONORABLE CHARLES N. CLEVERT, JR., PRESIDING**

---

| | |
|---|---|
| Date: | July 15, 2013 |

Type of Proceeding: Motion Hearing

| | | | |
|---|---|---|---|
| Start Time: | 9:06:21 a.m.<br>10:41:35 a.m. | End Time : | 10:08:04 a.m.<br>11:10:40 a.m. |
| Deputy Clerk: | Chrissy Stanton | Court Reporter: | FTR Gold |
| Appearances: | Plaintiff:    Attorney John Machulak<br>Defendant:  Attorney Jan Smokowicz | | |
| Disposition: | The court grants the defendant's motion to exclude testimony by Michael Brever on damages pursuant to Fed. R. Evid. 701 and 702. [10] | | |
| Notes: | The parties discuss the motion to exclude the testimony of Michael Brever, Executive Director of Tri-Corp Housing, with respect to Tri-Corp's damages for loss of property value, loss of revenue and loss of reputation. Brever was designated as an expert because of his position as Executive Director; however, defendant asserts that Brever may have obtained or seen appraisals regarding West Samaria but did not perform the "mechanical function of making the judgment" about what the building was worth. The building had no substantial value - no one wanted the building and it no longer exists. | | |

Brever's calculation of damages range from $1.5 million to $15 million.

Plaintiff argues that Brever has been involved with the organization in some manner since 1981. There is no one in the organization with more knowledge about the finances of the organization or how it works. The board members are volunteers who attend meetings once a month.

Court understands Brever's history with the organization but wants to know how Brever is able to calculate damages. Plaintiff responds that Brever was involved in negotiating the purchase price for New Samaria, located a suitable site for New Samaria and worked with the municipality.

Court points out that plaintiff has provided little information about Brever's ability to testify.

| | |
|---|---|
| 9:24 | Michael Brever- takes the stand. Direct by Attorney Machulak. |

Brever is the Executive Director of Tri-Corp Housing Inc. Currently works full-time as the Development Manager at Milwaukee Public Television. Has an undergraduate (B.A.) from U.W.M. and a masters degree from Cardinal Stritch.

Brever was involved in the acquisition of New Samaria. The process began with a directive from the Board because East Samaria was no longer adequate to meet the needs of the disabled individuals in their care. Brever used a real estate broker to assist in finding a suitable location. He toured ten or fifteen facilities and New Samaria, located on 67th and Beloit, had potential zoning issues. Brever had to petition the City of West Allis to obtain a variance. Also, he worked with the lender and negotiated a blanket mortgage over the two properties with WHEDA. The hardest part was shutting down the old facility and relocating the patients to a facility that accommodated fewer patients.

Brever believes he can translate the value of New Samaria to West Samaria because the services that were provided were virtually identical and there was one blanket mortgage so the expenses were similar.

Brever testified that Tri-Corp was seen as the largest and most successful provider of housing in the City of Milwaukee. In the world of nonprofits, according to Brever, you can take the financial loss of today but the real loss is to credibility and reputation. Arguably – at

the time of these events – Tri-Corp was seen as one of the best in the City of Milwaukee. However, it was discredited and left in disarray. Brever further testified that grant revenue dropped from $1.5 million to $25,000, and Tri-Corp's ability to provide services became extinct. Tri-Corp's annual budget of $6 million was gone by the time these events played out and $6 million provides the potential valuation for the corporation.

Given that West and New Samaria were under one mortgage, Tri-Corp couldn't walk away from West Samaria. As the occupancy dwindled, Tri-Corp could not pay its bills or provide for the needs of the residents.

| | |
|---|---|
| 9:50 | Cross-examination by Attorney Smokowicz. |

Brever admits that neither his bachelors nor masters degree is in accounting. New Samaria was purchased in 2001 and the events regarding the foreclosure on West Samaria occurred in 2007. Brever is attempting to extrapolate from knowledge of events six years before.

West Samaria is located around 27th and State Street. In reaching the valuation analysis, Brever admits he did not compare and contrast the value of the two buildings or the size of the acreage. One criticism of West Samaria was that there was no external property for the residents as opposed to the acreage available at New Samaria. Brever admits that he did not look at properties around West Samaria to come to some sort of valuation.

Brever was involved in the purchase of New Samaria and came up with the purchase price based on the assessed value, Tri-Corp's ability to generate revenue, and what WHEDA was willing to loan to Tri-Corp when the property was acquired. There was an appraisal done on the property after the offer was accepted on behalf of the mortgagor.

Brever did not perform an appraisal of West Samaria in 2001 when the renovation work was done. He admits that the property was acquired in 1976 and may have been constructed ten to fifteen years prior to that. Moreover, Brever acknowledges that replacement costs he has considered are new construction figures and that he has relied on an article in the Milwaukee Journal Sentinel newspaper to calculate damages.

|       | When Brever refers to events he means the 2007 foreclosure. In terms of valuing reputation or goodwill, Brever admits that he is not an accountant and that the item of goodwill is not included in any financial statements produced by WHEDA or annual reports. |
|---|---|
|       | When asked for the dollar amount of the loss of goodwill, Brever could not give an exact amount but thinks that it would be $6 million in gross income before any expenses are applied. This is based on the annual revenue stream for the organization. Tri-Corp's reputation at that time was sufficient to generate $6 million in revenue. Brever admits that there is no academic study to support how he would come up with that number and that he has not consulted with his attorney about how to come up with that number. |
| 10:08 | The court breaks. |
| 10:37 | The court resumes with cross-examination of Brever. Brever acknowledged that he earlier testified that the value of lost goodwill is $6 million. Defense asks about Brever's affidavit (Doc. 14), which states at paragraph 40 that "measuring reputation and goodwill by this standard, Tri-Corp's loss of goodwill easily amounts to $300,00 per year." However, in a March 20, 2009 affidavit, Brever states that the loss to Tri-Corp's reputation is no less than $10 million. Hence, the defense notes that he has provided three numbers for loss of goodwill: $2.4 million ($300,000 * 8 years), $6 million, and $10 million. |
| 10:49 | Re-direct. Brever states he misspoke when he said $6 million. Continuing, he stated the $300,000 is based on the number of years since the incident involving defendant Bauman and anticipated growth of Tri-Corp. Brever was involved in the accounting with Tri-Corp on a daily basis, and had no problem understanding the financial information generated monthly. That Brever stated Tri-Corp's financial information supports the figures that were put into his affidavit. |
| 10:57 | Witness excused. |
|       | Court sustains the defense objection to Brever's opinion testimony in this case for multiple reasons. |
|       | First, to the extent that the plaintiff is attempting to offer Brever as a lay witness, the plaintiff needs to demonstrate that Brever's testimony is based on information that he has observed personally. In that regard, the court notes that one of the key factors in Brever's valuation is his reliance upon a 2008 newspaper article in the |

4

Milwaukee Journal Sentinel. Brever has not researched the data underlying that article.

Second, Brever has not offered – through his affidavit or testimony-- particulars with regard to his work with the numbers at Tri-Corp. He has talked about what occurred when Tri-Corp was acquiring other property in 2001, his dealings with WHEDA, and Tri-Corp's housing units. He has not talked about what he knows or what he put together with respect to the numbers addressing West Samaria.

Third, Brever did not prepare anything with respect to what was going on in the neighborhood or comparable properties for disabled individuals within the City of Milwaukee. Rather, he has taken information regarding the newest property (New Samaria) and superimposed it on the other property (West Samaria). The testimony indicates that the New Samaria and West Samaria properties are very different, particularly with respect to the surrounding real estate.

The court notes that Brever has given three different figures regarding the loss of goodwill. Those figures are inconsistent. Any expert needs to provide objective data upon which his or her opinion rests. Much of what the court has heard is nothing more than speculation. For example, the mere fact that Tri-Corp had revenue does not mean it had net income or profits. It may have gross income that was eaten up by costs. In this particular instance, the defense pointed out that Tri-Corp showed a loss over most of the years of its existence.

The court acknowledges that an officer of an entity may, in certain circumstances, be able to offer opinion testimony. However, plaintiff has not provided the essentials to allow Brever to testify about value. The court further notes that the Milwaukee entity was not on the tax rolls, thereby making it difficult for the executive director to testify about value. The City of West Allis assessment used in determining value was not prepared by Brever; rather it was prepared by the City using a formula. It has not been shown that the West Allis assessment formula is the same formula that would be used by the City of Milwaukee.

There has been no testimony about ongoing demand for West Samaria, the Milwaukee facility or any particular data that provides a basis for Brever's opinion testimony. The only testimony regarding reputation damages is that WHEDA called upon Tri-Corp in the past to assist it in dealing with troubled properties. There is simply not enough data in the record to support Brever's testimony.

Therefore, Brever will not be able to offer opinion testimony in this trial if the case survives summary judgment. He has not been shown to have specialized experience and personal knowledge that gives him the ability to offer valid, creditable opinion testimony. He may testify about facts but his opinion on valuation is rejected. Court clarifies that Brever may testify about data but that will be subject to objection. Court does not know what information Brever has regarding specific sums to support losses. If he has objective data to support his conclusion, he may be able to testify as to such.

6