CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 14-1358

TRI-CORP HOUSING INCORPORATED,

*Plaintiff-Appellant,*

*v.*

ROBERT BAUMAN,

*Defendant-Appellee.*

───────────────

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 12-C-216 — **C.N. Clevert, Jr.**, *Judge.*

───────────────

ARGUED DECEMBER 9, 2015 — DECIDED JUNE 13, 2016

───────────────

Before EASTERBROOK and HAMILTON, *Circuit Judges*, and
PALLMEYER, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. Tri-Corp Housing, a nonprofit corporation, offered low-income housing to mentally disabled persons in Milwaukee County, Wisconsin. Its principal lender, the Wisconsin Housing and Economic Development

───────────────

[*] Of the Northern District of Illinois, sitting by designation.

Authority, filed a foreclosure action in state court. Tri-Corp blamed many other persons and entities for its financial problems and named several of them as third-party defend- ants. The state judiciary allowed the lender to foreclose and ruled against Tri-Corp on all of the third-party claims except those against Robert Bauman, one of Milwaukee's aldermen. *Wisconsin Housing & Economic Development Authority v. Tri Corp Housing, Inc.*, 2011 WI App 99. Bauman then removed to federal court what remained of the case.

Tri-Corp contends that Bauman is liable to it under 42 U.S.C. §1983 for issuing statements and press releases critical of its operations and for lobbying other officials to rule against it in administrative proceedings. For example, in 2006 Bauman told the Board of Zoning Appeals that one of Tri-Corp's facilities was "unfit for human habitation". The next year, after a resident of that facility was found dead in his room, Bauman sent an email to Milwaukee's Department of Neighborhood Services asking it to revoke the special-use permit under which the facility had been operating. The De- partment did revoke the permit, but the Board reinstated it. Bauman then criticized the Board to the press as complicit in maintaining substandard facilities; Bauman stated that Tri- Corp had "repeatedly demonstrated that they are unwilling or unable to provide quality care to … mentally disabled res- idents". We will assume, for the purpose of this appeal, that Bauman persuaded the Economic Development Authority to bring the foreclosure action—though the Authority says that it had begun that process on its own.

Tri-Corp calls Bauman's statements and lobbying a form of interference with its contracts and maintains that he vio- lated the Fair Housing Act, the Rehabilitation Act, and the

No. 14-1358                                                3

Americans with Disabilities Act. Its theory is that Bauman's speeches and lobbying hurt Tri-Corp's business and made the foreclosure more likely.

Normally litigation based on those statutes invokes the private rights of action created *by* those statutes, but Tri-Corp is adamant that it is relying exclusively on §1983 and does not seek the remedies those statutes provide. That cost it the suit in the district court, which held that §1983 cannot be used to enforce any of these three statutes. 2014 U.S. Dist. LEXIS 7734 (E.D. Wis. Jan. 22, 2014).

We pressed Tri-Corp's lawyer at oral argument to tell us why he disdains relief directly under these statutes. Counsel lacked an answer with respect to the Fair Housing Act, which creates remedies in favor of entities such as Tri-Corp that supply housing to the poor or disabled, and authorizes suits against governmental bodies and officials. See *New West, L.P. v. Joliet*, 491 F.3d 717, 721 (7th Cir. 2007). A claim directly under the Fair Housing Act would be superior to one under §1983, which adds a state-action requirement and the need to show, through the framework of *Maine v. Thiboutot*, 448 U.S. 1 (1980), that a §1983 remedy is appropriate. We shall treat the Fair Housing Act claim as one directly under the statute.

With respect to the Rehabilitation Act and the Americans with Disabilities Act, however, the reason for invoking §1983 is clearer. Those statutes authorize suits by disabled persons against employers, places of public accommodation, and some governmental bodies, but a city's alderman is not in any of those categories. Unless §1983 can be used to expand the categories of persons subject to suit under those laws, and to allow a claim by a provider of services rather than a

disabled person, Tri-Corp is going nowhere. Relying on decisions such as *Blessing v. Freestone*, 520 U.S. 329 (1997), and *Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), the district court held that §1983 cannot be used to override limitations included in a federal statutory framework. See also, e.g., *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015) (claim cannot be based directly on the Constitution's Supremacy Clause when Congress has adopted a system that limits private enforcement to particular methods).

Six courts of appeals have addressed this subject; all six come out the same way as the district court. *Ramirez-Senda v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008) (ADA and Rehabilitation Act); *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 803–06 (3d Cir. 2007) (en banc) (Rehabilitation Act); *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999) (Rehabilitation Act); *Alsbrook v. Maumelle*, 184 F.3d 999, 1010–12 (8th Cir. 1999) (en banc) (ADA); *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) (ADA and Rehabilitation Act); and *Holbrook v. Alpharetta*, 112 F.3d 1522 (11th Cir. 1997) (ADA and Rehabilitation Act), all hold that §1983 cannot be used to alter the categories of persons potentially liable in private actions under the Rehabilitation Act or the Americans with Disabilities Act. We agree with those decisions. Tri-Corp relies on *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), which holds that §1983 may be used to enforce Title IX of the Education Amendments of 1972. But Title IX, the Court held, lacks a comprehensive remedial scheme that could be displaced by the use of §1983. The Rehabilitation Act and the Americans with Disabilities Act, by contrast, specify in detail who may be sued for damages, and using §1983 to override the limits of those statutory lists is unwarranted.

No. 14-1358                                                    5

That leaves the Fair Housing Act. Although the parties disagree about whether Tri-Corp, which concedes that it lacks a claim under 42 U.S.C. §3604, might nonetheless have one under 42 U.S.C. §3617, the subject of *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (en banc), we do not pursue that topic. For Tri-Corp does not allege that Bauman himself denied it any right under the Act, or even was a member of a public body that did so. Tri-Corp accuses Bauman of *speech*, not action. And that's all the difference.

Public officials such as aldermen enjoy the right of free speech under the First Amendment, applied to the states through the Fourteenth. Speech is a large part of any elected official's job, in addition to being the means by which the official *gets* elected (or re-elected). Teddy Roosevelt called the presidency a "bully pulpit," and all public officials urge their constituents and other public bodies to act in particular ways. They have every right to do so, see *Novoselsky v. Brown*, No. 15-1609 (7th Cir. May 10, 2016), as long as they refrain from making the kind of threats that the Supreme Court treats as subject to control under the approach of *Brandenburg v. Ohio*, 395 U.S. 444 (1969). See also *Swetlik v. Crawford*, 738 F.3d 818, 829–30 (7th Cir. 2013) (concurring opinion). That's why we held in *Freedom from Religion Foundation, Inc. v. Obama*, 641 F.3d 803 (7th Cir. 2011), that the President is entitled to urge all Americans to pray, even though the First Amendment disables the government from requiring them to do so.

The First Amendment prevents both state and federal governments from controlling political speech. It would be most surprising to find in the Fair Housing Act an attempt to penalize political speech, and Tri-Corp does not contend that

the statute has any language doing so. The most one could say is that after *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015), which holds that two sections of the Fair Housing Act authorize a mild form of review for disparate impact, a litigant might contend that speech creating a disparate impact should be treated the same as action. But *Inclusive Communities* dealt with sections 804(a) and 805(a), 42 U.S.C. §§ 3604(a), 3605(a). Tri-Corp does not seek relief under either of these sections.

We do not see in the Fair Housing Act any effort to displace the *Noerr-Pennington* doctrine, which the Supreme Court has treated as a mixture of statutory interpretation and constitutional imperative. See *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Under the *Noerr-Pennington* doctrine, speech and other efforts to influence governmental activity cannot be the basis of legal penalties, unless the proposal to the governmental body is a sham and the speech itself imposes costs independent of what the governmental body does—for example, a lawsuit designed to make the other litigant bear the costs of mounting a defense, even though the suit has no chance of success. See *BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002) (recapitulating the *Noerr-Pennington* doctrine).

*New West*, 491 F.3d at 721–22, holds that the *Noerr-Pennington* doctrine applies to claims under the Fair Housing Act—and in *New West*, just as in this case, officials of one governmental body tried to persuade officials of a different public body to act in a particular way. Tri-Corp does not contend that any exception to the *Noerr-Pennington* doctrine ap-

No. 14-1358                                                7

plies to Bauman's speech and lobbying. That's all one needs
to say to show why Tri-Corp cannot prevail against Bauman.

AFFIRMED

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

June 13, 2016

Before:          FRANK H. EASTERBROOK, Circuit Judge
                 DAVID F. HAMILTON, Circuit Judge
                 REBECCA R. PALLMEYER, District Court Judge*

|  |  |
|---|---|
| No. 14-1358 | TRI-CORP HOUSING INCORPORATED, <br> Plaintiff - Appellant <br><br> v. <br><br> ROBERT BAUMAN, <br> Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 2:12-cv-00216-CNC <br> Eastern District of Wisconsin <br> District Judge Charles N. Clevert | |

The judgment of the District Court is **AFFIRMED,** with costs, in accordance with the decision of this court entered on this date.

_____
* Of the Northern District of Illinois, sitting by designation.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 5, 2016

To:      Jon W. Sanfilippo
         UNITED STATES DISTRICT COURT
         Eastern District of Wisconsin
         Milwaukee , WI 53202-0000

| No. 14-1358 | TRI-CORP HOUSING INCORPORATED,<br>Plaintiff - Appellant<br><br>v.<br><br>ROBERT BAUMAN,<br>Defendant - Appellee |
|---|---|

| **Originating Case Information:** | |
|---|---|

District Court No: 2:12-cv-00216-CNC
Eastern District of Wisconsin
District Judge Charles N. Clevert

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

AMOUNT OF BILL OF COSTS (do not include the $):        133.50

DATE OF MANDATE OR AGENCY CLOSING LETTER ISSUANCE:        07/05/2016

RECORD ON APPEAL STATUS:               No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                                    **Received by:**

___7/5/2016_____                    _____/s/ Lisa M. Forseth_____

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## BILL OF COSTS

July 5, 2016

Taxed in Favor of: **Appellee Robert Bauman**

| No. 14-1358 | TRI-CORP HOUSING INCORPORATED, Plaintiff - Appellant<br><br>v.<br><br>ROBERT BAUMAN, Defendant - Appellee |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:12-cv-00216-CNC<br>Eastern District of Wisconsin<br>District Judge Charles N. Clevert | |

The mandate or agency closing letter issued in this cause on July 5, 2016.

BILL OF COSTS issued in the amount of: $133.50.

|  |  | Cost of<br>Each Item | Total Cost<br>Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: _____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page: _____ | _____ | _____ |
| 3. | For reproduction of briefs: | _____ | ___133.50___ |

4.  _____        _____        _____

5.  _____        _____        _____

                                                    TOTAL:        \_\_133.50\_\_\_

form name: **c7_BillOfCosts**(form ID: **140**)